## Duryea Borough School District's Audit.

*School law—Treasurer—Compensation—Payment to treasurer on his own orders—School Code of May 18, 1911—Act of July 21, 1919.*

1. Under the School Code of May 18, 1911, P. L. 309, the treasurer cannot be allowed compensation on account of any balance in his hands paid over to his successor.

2. The treasurer is entitled to payment of commission on proper orders for his own compensation.

3. A treasurer elected before the Act of July 21, 1919, P. L. 1076, which amended the Act of May 18, 1911, P. L. 309, is entitled to commissions on repayment of loans or redemption of bonds, inasmuch as he would be entitled to such commissions if it were not for the amendment.

4. In such case the treasurer is protected by art. iii, § 13, of the Constitution, which prohibits the reduction of the compensation of a public officer during his term of office.

*School law — Repairing buildings — Three-hundred-dollar limit — Act of July 10, 1919—Advertising.*

5. The Act of July 10, 1919, P. L. 889, amending section 617 of the School Code of 1911, and limiting certain expenditures to $300, will not be strictly construed as to repair or patch jobs, where the proof of total expenditure is not clear, where no fraud is alleged, and where circumstances point to an economical use of the money.

6. The Act of July 10, 1919, does not require school directors to advertise for competitive bids on all repairs as a single job. It is not necessary where the costs for repairs of a single building for material and labor are less than $300.

7. The practice of buying plumbing material for different buildings in a lump way is subject to censure, unless it is accompanied by a system under which the final disposition of the material and its use can be ascertained and stated by the auditors.

*School law—Expenses to conventions—Act of April 18, 1919.*

8. The expenses of only one delegate to a school directors' convention will be allowed under the Act of April 18, 1919, P. L. 56, and the account of such expenses should be stated in detail and not lumped.

Appeal by taxpayers from the auditors' report. C. P. Luzerne Co., Dec. T., 1920, No. 625.

*John D. Farnham*, for appellant; *G. J. Clark*, for appellee.

STRAUSS, J.—This appeal presents four questions:

First. Whether the school treasurer was entitled to receive commissions on commissions for which orders were drawn and paid to him?

Second and third. Whether the expense of certain repairs in the Washington Building, and for certain heating and plumbing repairs upon this and

1 D. & C.

others buildings, were in violation of the School Code, which prohibits the board to incur expense beyond $300 without advertisement and contract after competitive bidding?

Fourth. Whether certain orders drawn to compensate directors for attending a directors' convention were lawful?

The first question involves:

(a) A commission of 85 cents allowed on $42.80, being the balance due the treasurer from the previous year.

(b) A commission of $20 allowed to James Donley, treasurer (between the first Monday of July and the first Monday of December, 1919), being 2 per cent. on $1000, commissions on orders lawfully paid by him to other persons.

(c) A commission of $17.03 allowed to Michael Swantkowski, treasurer (from the first Monday of December, 1919, to the end of the school year in 1920), being 2 per cent. on $851.50, commissions on orders lawfully paid by him to other persons.

(d) A commission of $710 allowed to James Donley, treasurer as aforesaid, on bonds and interest thereon and temporary loans for which orders had been drawn and were paid by said treasurer in October, 1919.

As to (a), the commission was improperly allowed, because the School Code, § 329, expressly forbids compensation to a school treasurer on account of any balance in his hands paid over to his successor. The balance on which this commission is charged was a balance in the hands of this same treasurer as per audit of the preceding year, and is, therefore, to be treated exactly as if another treasurer had been in office and had turned over the balance found to be due from him to the present accountant.

As to (b) and (c), we are of the opinion that the treasurer was lawfully entitled to receive commissions upon the orders drawn in his own favor for commissions, because, under the School Code of 1911, the treasurer was required to pay money out of the school funds, upon proper orders, signed by the president (sections 324 and 511), and the salary of the treasurer was directed to be such compensation as the school board may determine, not to exceed 2 per cent. of the amount of funds paid on school orders. It is admitted that the school board had fixed the salary at 2 per cent. on orders paid by him.

It is a fair construction of the School Code to require the treasurer's compensation to be paid upon orders. In this respect the School Code differs from the Act of, May 8, 1854, P. L. 617, under which the schools were in the greater part of the State governed prior to the adoption of the School Code, in that under the latter act the treasurer was permitted "to retain not exceeding 2 per cent. on the moneys passing through his hands for his services." Had this provision been re-enacted in the School Code, there can be no doubt of the fact that the treasurer would not have been entitled to the commissions upon his commissions. As, however, the requirements now are that all funds belonging to the district shall be deposited in a depository to be named by the board, and that the treasurer shall pay out the funds only on proper orders, it would seem to follow that he receives his own compensation only through payment of orders drawn by the board. The commission to which he is entitled being upon all orders paid by him, necessarily includes the orders in his own favor.

As to (d): On July 21, 1919, the legislature passed an act amending section 329 of the School Code, so that thereafter the treasurer should not be entitled to commissions on the repayment of any loan or redemption of bonds, whether upon order or otherwise. The fact that this amendatory legislation

was deemed proper or necessary justifies the conclusion that except for it commissions were allowed for payment of bonds.

James Donley had been elected treasurer before this act was passed, and his compensation was fixed at the time of his election at 2 per cent. on all orders drawn. The bonds that were redeemed in October, 1919, were paid in pursuance of orders issued directing the treasurer to pay them. The treasurer is a public officer and is protected by article III, § 13, of the Constitution, which provides that: "No law shall extend the term of any public officer or increase or diminish his salary or emoluments after his election or appointment."

Therefore, all the commissions, except 85 cents, which the several treasurers paid and the auditors allowed, were lawfully allowed, but Donley is subject to a surcharge for 85 cents on this account.

2. Repairs to Washington Building. These are included in orders No. 9, Harold Donley, $61; No. 10, Peter Judala, $61; No. 11, George Judala, $61, and No. 38, Turon and Schwartz, 4000 feet of yellow pine flooring, at $70 per M and $5 cartage, less 3 per cent., net bill $276.45, a total of $459.45. Donley, Peter and George Judala were in employment of the district, at 50 cents per hour, to do sundry odd jobs of carpentry, painting, etc., at various buildings, their wages being materially less than usual for that class of work. Because the total is in excess of $300, it is contended that these orders should be disallowed as having been issued in violation of the Act of July 10, 1919, P. L. 889, and, therefore, charged against the several school directors.

If it clearly appeared that these bills were all incurred in connection with laying new floors in the Washington Building, we would be compelled to sustain that contention.

But such evidence as has been produced as to the total cost of laying these floors leads to the conclusion that the floors cost less than $300. Of the 4000 feet of flooring, it has been testified, only about 3000 feet went into this job, the remaining lumber being used by the school district elsewhere. So, also, it has been testified that two or three days only were required to lay the floors. Though the evidence is somewhat indefinite and does not enable us to fix exactly the amount which was expended for this particular repair, it is sufficient to base the conclusion that it was well within the legal limit.

In our opinion, the Act of July 10, 1919, P. L. 889, by amending section 617 of the School Code and introducing into the statute limiting certain expenditures to $300 the words "where the entire costs, value or amount of such construction, reconstruction, repairs or work, including labor and material," is so drastic that it is not likely to produce economy in ordinary repairs which school directors must from time to time undertake.

Responsible contractors do not bid closely on "patch jobs" that may in the course of performance develop unexpected defects and consequent unforeseen expense. Yet the act limiting the cost of repairs on any building to less than $300, except where there has been competitive bidding, would almost compel school directors (serving without pay and naturally desiring to avoid the danger of surcharge for an involuntary violation of law) to cause repairs to be done in many instances by contract at higher figures than would be required if done in the manner adopted at the Washington Building. It would have been wiser in this case if the directors had kept track of the exact quantity of flooring used and of the exact time devoted to its installation. Not having done that, however, they are limited to the best evidence that under the circumstances can be presented. Where there are no circum-

1 D. & C.

stances from which fraud or bad faith can be inferred, that is all that should be required of them in measuring their duties under a statute so drastic as this one. There is no sufficient evidence of violation of this statute in connection with these orders, and we, therefore, approve the report of the auditors in allowing them.

3. Repairs to the McKinley Building. This covers two orders in favor of Haggerty Brothers, No. 57, which, according to the invoice, is for radiators, valves and air vents, under date of Aug. 10, 1919, $270; and No. 69, which, according to the invoice, is for changing and repairing steam, fifteen days' time steamfitter, fifteen days' time helper and carfare Aug. 1st, $252.80. The radiators had been purchased from Haggerty Brothers in the preceding March. It was the purpose of the school board to have the work done by some of its own employees—teachers or janitors in vacation. They actually undertook to do it, but found it beyond the ability of their employees, and then Haggerty was called in to do it, and so the bill for labor was incurred.

In view of the fact that the radiators were purchased long before the Act of July 10, 1919, was passed, we are of the opinion that these items were not incurred in violation of that statute, nor can we find that they were obtained in violation of the unamended School Code, § 617. We, therefore, affirm the correctness of the audit in allowing these payments.

Order No. 64, remodeling steam in manual training school, labor and material, $115.42, and order No. 85, covering sundry plumbing material bills and labor furnished to the district generally. In a separate request for findings of law these orders are lumped with orders Nos. 57 and 69, already referred to, making a total of all four orders of $825.88, which we are asked to declare unlawful as being in violation of the Act of July 10, 1919.

The evidence shows that order No. 85 was for work done on the Roosevelt Building.

The Act of July 10, 1919, P. L. 889, does not require the school district to advertise for competitive bids upon all the repairs that may be required in the district as a single job. It is restricted by its plain language for work done or material furnished, or improvements made upon any school building; that is, the requirement for each building shall be regarded as a single object and shall not be combined with the requirements for other buildings. If the work and material furnished to any one building involves an expenditure less than $300, it may be executed without competitive bidding. Therefore, we hold that orders Nos. 64 and 85 were not unlawfully issued, and the auditors' report is in that respect also confirmed.

4. The appellant also asks that order No. 18, paid to Haggerty Brothers under date of Sept. 2, 1919, shall be disallowed, the amount being $256.86, of which $231 was in a lump item for material furnished as per price given on July 2, 1919.

The evidence indicates that this material was purchased generally for use in the district and not specifically for any building, and that it was so used. Much of the work was done by janitors and male teachers in vacation time, and was undertaken upon the theory that by this means the employees would be kept busy during the summer, and at the same time working at wages for less than would have been paid to regular craftsmen, a substantial saving would be effected to the district. As already said, it was all done in good faith. The $231 item was contracted before the Act of July 10, 1919, was passed, and, therefore, in our opinion, does not fall within the prohibition of that act.

The auditors' report is, therefore, confirmed so far as relates to this order.

5. The Act of April 18, 1919, P. L. 56, authorizes the school boards to appoint "from among their number one delegate to any State convention or association of school directors held within the Commonwealth. It shall be the duty of such delegate to attend the meetings of the convention or association, and each delegate so attending shall be reimbursed for all necessary traveling and hotel expenses actually incurred. Such expenses shall be paid by the treasurer of the school district in the usual manner out of school funds of the district, upon presentation of an itemized verified statement of such expenses."

Two orders were drawn, Nos. 188 and 189, for $50 each in favor of Joseph Ostrowski and Frank Bachor, respectively, under date of March 1, 1920, the one in favor of Frank Bachor being for "attending convention at Harrisburg, Pa.," and the other in favor of Ostrowski for "attending directors'. convention, Harrisburg."

So far as they furnish any light, they may have been issued for attending the same convention, in which event the action would be unlawful, because the directors are by the statute authorized to send only one delegate. The brief presented by the attorney for the school directors would seem to suggest that one of these orders was for attending a secretarys' convention. This, however, is not such a convention as the act contemplates. Only "a convention or association of school directors" is within the contemplation of the law. But these bills are also unlawful because they violate the act, in being presented for a lump sum instead of "necessary traveling and hotel expenses actually incurred." The school board was not authorized to pay even these, except on "presentation of an itemized verified statement of such expenses." The bills presented are neither itemized nor verified; that is, they are not sworn to, which, according to our understanding, is the purport of the term "verified."

These orders are, therefore, disallowed.

The appellants call attention to the fact that the auditors fail to state the account with each treasurer, viz., with Donley for the period ending Dec. 1, 1919, and with Swantkowski for the period beginning on that date and ending with the school year.

As the only surcharge that we would make against Donley is 85 cents, being commission on $42.80 that was in his hands at the beginning of the year, as per the audit of the preceding year, this item is too small to make it worth the while to figure out exactly what money was in the hands of Donley when he retired from the office and for which Swantkowski was liable, nor have we the time to do that work.

We shall, therefore, follow the auditors in stating the account with both treasurers for a year as a single proposition. Swantkowski is one of the school directors, and is, therefore, liable to the surcharge of this 85 cents in that capacity. We shall restate the treasurer's account at the end of this opinion.

We have not answered the specific requests for findings of law and fact because we do not think that we are required to do so. The equity rules are not applicable here. [Here follows restatement of account in detail.]

It will be observed that we have not surcharged the school board for any bills covering plumbing materials bought generally for use of the district and applied at the various buildings, although the school accounts do not show where this material was used. The practice of buying this sort of material in this lump way is a bad practice, unless it is accompanied by a system under which the final disposition of the material and its use can be ascer-

1 D. & C.

tained and stated by the auditors. Such practice, while it barely escapes the condemnation of the written law, should be avoided.

We also direct that the school directors who participated in the issuing of orders Nos. 188 and 189, and allowing improperly the item of 85 cents as a commission to James Donley, to wit, Frank Bachor, John J. Kelley, Philip McCall, Michael Swantkowski, Joseph Ostrowski, John Crossman, be surcharged the amount of these three items, to wit, $100.85, and unless payment be made forthwith of this amount to the present treasurer, that upon the præcipe of appellant's attorney judgment be entered jointly and severally against the directors aforesaid and against Michael Swantkowski, treasurer, for $100.85.

It is ordered that the costs of this appeal be paid by the school district.

From F. P. Slattery, Wilkes-Barre, Pa.